# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BOBBY FORD, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 06-cv-449-MJR |
| SCOTT R. WRIGHT, MICHAEL J. KABAT, and WESLEY SHIRLEY, | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

### A. INTRODUCTION AND BACKGROUND

Plaintiff Bobby Ford, a former inmate in the Pinckneyville Correctional Center, filed this action on June 9, 2006, alleging deprivations of his constitutional rights by prison personnel in violation of 42 U.S.C. § 1983. The Court completed its threshold review under 28 U.S.C. § 1915A on August 1, 2007, finding that Ford stated two claims: 1) against Defendants Shirley and Kabat for unconstitutional use of excessive force arising from an incident that occurred on October 7, 2005, and 2) against Defendant Wright for unconstitutional use of excessive force arising from an incident that occurred on October 28, 2005.

*Claim 1*

The filings in the case indicate two versions of the events of October 7, 2005. Plaintiff claims that on that day, Defendant Kabat arrived at his cell to escort him to the medical unit. He cuffed Plaintiff's hands behind his back. Plaintiff complained that the handcuffs were too tight, and asked Defendant Kabat to loosen them. When Kabat did not loosen them, Plaintiff made a remark about the handcuffs. In response, Defendant Kabat ordered Plaintiff to return to his cell.

Plaintiff claims that he complied fully by returning to his cell, which Defendant Kabat closed and locked. Plaintiff claims he requested to see a sergeant or lieutenant because he still wanted to go to the medical unit. Shortly thereafter, Defendant Shirley entered Plaintiff's cell and attacked him while Plaintiff's hands were cuffed behind his back. Defendant Kabat also entered the cell and attacked Plaintiff with a lead chain (Doc. 1).

Defendant Kabat filed a disciplinary report against Plaintiff which indicates a different version of events. The report states that while en route to the medical unit, Ford made an expletive-laden inflammatory remark. In response, Kabat ordered Ford to return to his cell, but Ford refused to comply. The report states: "I/M Ford kept trying to resist by putting his foot against the bed and trying to come out of the cell. C/O Shirley came to assist in securing I/M" (Doc. 1-2, pp. 8-9). On October 13, 2005, after hearing testimony from two other guards, the Pinckneyville Adjustment Committee found Plaintiff guilty of the charges of disobeying a direct order and insolence. As the basis for the decision, the Committee reported: "Ford was given a direct order to get in the cell, he refused to comply. Ford kept trying to resist going into his cell by putting his foot against the bed" (Doc. 1-2, pp. 6-7). Plaintiff was disciplined with a three-month demotion to C-grade status, three months in segregation, and revocation of one month of good conduct credit. Plaintiff filed a grievance challenging the disciplinary action. That grievance was denied (Doc. 1-3, pp. 6).

### *Claim 2*

Plaintiff claims that on October 28, 2005, Defendant Wright was loudly unlocking chuck hole doors on Ford's unit. When Wright arrived at Ford's cell, Ford placed his hand out to prevent the chuck hole door from bouncing. Defendant Wright then "slam[med]" his steel key onto

Ford's hand, cutting a finger on his right hand.

Defendant Wright filed a disciplinary report alleging a different version of events: that Plaintiff Ford assaulted him. The report stated that when Wright arrived at Plaintiff's cell to unlock the food slot door, Plaintiff intentionally slammed the food slot door against Defendant Wright's wrist (Doc. 1-2, p. 12). On November 3, 2005, after hearing testimony from three inmate witnesses, the Pinckneyville Adjustment Committee found Plaintiff Ford guilty of assaulting Defendant Wright. As the basis for its decision, the committee stated:

> Based on DR written by reporting employee who while feeding inmate Ford through the chuck hole, Ford slammed the chuck hole on officers wrist. In inmates written statement he stated the officer opened the chuck hole and reacted in shock or on guard of attack like he was being atttacked. Inmates witness stated Ford opened his chuck hole. Another inmate stated Ford put his hand out of the chuck hole. Another inmate stated he heard the officer say Ford shouldn't have his hands out of the chuck hole. One witness stated he heard the officers keys slam against the metal. Inmates witness's all stated they didn't see anything but they heard accounts of the incident.

(Doc. 1-2, p. 15.) Plaintiff was disciplined with a six-month demotion to C-grade status, six months in segregation, revocation of six months good conduct credit, a six-month restriction on contact visits, and a transfer to a Level 1 institution (Doc. 1-3, p. 1). Plaintiff filed a grievance challenging the disciplinary action and accusing Defendant Wright of staff misconduct (Doc. 1-3, pp. 2-3). The institutional grievance officer denied the grievance (Doc. 1-3, pp. 4-5). The Administrative Review Board affirmed the denial (Doc. 1-3, p. 7).

## B. Procedural History

After some discovery, the Plaintiff filed a Motion for Summary Judgment on July 3, 2008, in which he reiterates his version of the events of October 7 and 28, 2005 (Doc. 34). Regarding the October 7 incident, Plaintiff maintains that he complied fully with Defendant Kabat's

order to return to his cell and that Defendants Shirley and Kabat attacked him without provocation and while his hands were cuffed behind his back (Doc. 34, p. 3). Regarding the October 28th incident, Plaintiff argues that all of the facts underlying the disciplinary action taken against him are false and that it was Defendant Wright who intentionally struck Plaintiff with his keys, cutting Plaintiff's hand.

Though Defendants opted not to file their own motion for summary judgment, they argue in their response (Doc. 35) that Ford's claims are barred by **Heck v. Humphrey, 512 U.S. 477 (1994).** Because the Defendants raised the potentially case-dispositive *Heck* issue, to which Plaintiff had not fully responded,[1] the Court entered an Order to Show Cause directing Plaintiff to explain why judgment should not be entered in favor of Defendants based upon *Heck* and its progeny (Doc. 38).

On March 9, 2009, Plaintiff filed a response to the Order to Show Case in which he argues that his claims are not barred by *Heck* (Doc. 39). Regarding claim one, Plaintiff states that he complied with the order to return to his cell and that he entered the cell handcuffed. Defendant Kabat then locked the door. Plaintiff states that Defendant Shirley then opened the cell door and attacked Plaintiff without provocation (Doc. 39, p. 2). Plaintiff then states that while being attacked, he attempted to exit the cell in order to alert other prison staff to the beating (Doc. 39, p. 3). He argues, therefore, that he committed insolence and disobeying a direct order "after the fact of first locking inside the cell that was reopen by Defendant Shirley" (Doc. 39, p. 4). He states further: "I'm guilty of the disciplinary report," and that he "accepts his punishment" (Doc. 39, p.4-5). In summary

---

[1] Plaintiff did provide some argument on Heck in his reply (Doc. 36), but the Court sought further briefing of the issue.

he states that he "did try repeatedly to come out the cell just as the disciplinary report by Defendant Kabat say. But only after first complying to the order" (Doc. 39, p. 5).

As to claim two, Plaintiff states that Defendant Wright came by his cell to unlock the chuck hole door. Plaintiff was standing inside the cell at the door "in order to stop it from bouncing" (Doc. 39, p. 6). Defendant Wright could not see Plaintiff on the other side of the door because it was early in the morning and still dark outside (Doc. 39, p. 5). As Defendant Wright unlocked the door, Plaintiff placed his hand on the door and pushed it downward, hitting Defendant Wright on the wrist. Plaintiff states that he did not know Defendant Wright's wrist was at the door. Plaintiff states that after the door hit his wrist, Defendant Wright intentionally struck Plaintiff's hand with the key he had just used to open the door, in an act of excessive force without penological justification (Doc. 39, p. 6). Plaintiff states that he "truly believe[d]" he did not assault Defendant Wright, and that Defendant Wright fabricated the disciplinary report (Doc. 39, p. 7). Plaintiff further claims that the disciplinary committee's findings were wrong. Had the disciplinary committee undertaken a proper investigation, they would have discovered evidence that "we both hit each other" but that Defendant Wright acted with a "malicious intent"(Doc. 39, p. 7).

### C. LEGAL STANDARDS

The United States Supreme Court held in *Heck* that

> in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by action whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus.

**512 U.S. at 486-87.** The Supreme Court clarified that a section 1983 claim cannot proceed when

the claim itself, if successful, would necessarily imply the invalidity of a prior criminal conviction that has not been invalidated. *Id.* **at 487.**

In *Edwards v. Balisok*, **520 U.S. 641 (1997)**, the Supreme Court applied the rule in *Heck* to prisoner disciplinary proceedings that resulted in the revocation of good conduct credit. The Court held that habeas corpus, not section 1983, was the proper vehicle for challenges to the procedures used during a prisoner disciplinary proceeding in which good conduct credits were revoked because success in a section 1983 action "would, if established, necessarily imply the invalidity of the deprivation of [Balisok's] good-time credits." **520 U.S. at 646.**

In *Okoro v. Callaghan*, **324 F.3d 488 (7th Cir. 2003)**, the Seventh Circuit found a district court erred in failing to find that *Heck* barred a § 1983 suit. The plaintiff in *Okoro* had been convicted of selling heroin. He later filed a civil suit claiming that he was not in fact selling heroin, but gems, and that the officers investigating the drug offense stole the gems. His suit sought return of or compensation for the gems. The district court did not find the civil suit *Heck*-barred because of the "theoretical possibility" that both drugs and gems were found in the search of the plaintiff's home. The Seventh Circuit reversed, holding that *Heck* barred his suit because the plaintiff's insistence that he did not have or sell heroin necessarily implied the invalidity of his conviction.

The Court reasoned that if the plaintiff had made such claim in his civil suit that the defendants did find heroin along with the gems, then the facts pled could have logically coexisted with the facts underlying the conviction. But instead, the plaintiff adamantly claimed that there were no drugs, only gems, and that they were stolen. Thus, his civil claims necessarily implied that the drug-conviction was incorrect, and "*Heck* kick[ed] in and bar[red] his civil suit." *Id.* **at 490.** The facts pleaded in the civil case did not leave open any possibility of peaceful coexistence between

civil case and criminal conviction. Thus, the Seventh Circuit held that a mere "theoretical possibility" that facts existed that could have been but were not pled was not sufficient to save the civil suit from the *Heck*-bar. *Id.*

The Seventh Circuit recently reiterated this reading of *Heck* in **Gilbert v. Cook, 512 F.3d 899 (7th Cir. 2008).** The district court in *Gilbert* relied on *Okoro* to determine that the plaintiff's civil claim of excessive force was *Heck*-barred because it was inconsistent with the validity of the underlying disciplinary sanction, which was based upon a finding that plaintiff assaulted a guard. The Seventh Circuit disagreed and held that *Heck* did not bar the excessive force claim. Although the Court determined that "Heck prevents a litigant from contradicting a valid judgment," the Court pointed out that "a contention that a guard struck back after being hit is compatible with *Heck*." *Id.* **at 901.** In holding that "*Heck* and *Edwards* do not affect litigation about what happens after the crime is completed," the Court stated, "[A]n argument along the lines of 'the guards violated my rights by injuring me, whether or not I struck first' does not present the sort of inconsistency that doomed Okoro's suit." *Id.* **at 901-02.** Such an argument demonstrates that plaintiff's "success would not imply the invalidity of the decision revoking his good-time credits." *Id.* "Only a claim that 'necessarily' implies the invalidity of a conviction or disciplinary board's sanction comes within the scope of *Heck*." *Id.*

### D. ANALYSIS

### 1. Claim One

With respect to the incident involved in claim one, Plaintiff was found guilty of disobeying a direct order by refusing to enter his cell. In his pleadings and motion for summary judgment, Plaintiff argues, however, that he fully complied with Defendant Kabat's order to return

to his cell (Doc. 1, p. 4; Doc. 34, p. 3). Thereafter, he claims that Defendants Shirley and Kabat attacked him without provocation while his hands were cuffed behind his back. In other words, he argues that the resulting disciplinary ticket charging him with disobeying a direct order and insolence was false. He further insists that Defendants Kabat and Shirley are lying in the affidavits presented in opposition to summary judgment.

After the Court ordered Plaintiff to show cause why his case should not be dismissed, the Plaintiff made subtle changes to his version of events in an attempt to circumvent the *Heck*-bar. His efforts are inadequate, however, because he continues to insist that he did comply with Defendant Kabat's order to return to his cell, which directly contradicts the finding of the disciplinary committee that Plaintiff refused to comply with that order. Plaintiff's refusal to comply is the very basis of the finding of guilt for failure to obey a direct order and insolence, which resulted in the revocation of good conduct credit. While it is not logically inconsistent that Plaintiff could have failed to comply with the order, and Defendants Kabat and Shirley responded with more force than necessary in attempting to force him into the cell, Plaintiff does not make any such admission. Instead, he vehemently contends that he complied with the order to return to his cell. Plaintiff's attempt to recast the facts by admitting that he was trying to leave the cell while being attacked without provocation *after* he had complied with the order is insufficient to save the claim because Plaintiff continues to insist that he complied with the guard's order, in direct contradiction of the finding of the disciplinary committee. As a result, a finding in Plaintiff's favor on this claim would necessarily imply the invalidity of the finding of the disciplinary committee, a finding which has not been invalidated through federal habeas review.

Accordingly, Plaintiff's claim against Defendants Kabat and Shirley is barred by

*Heck v. Humphrey*. Claim one against Defendants Kabat and Shirley are therefore **DISMISSED** from the action.[2]

**2. Claim Two**

With respect to the incident involved in claim two, Plaintiff was found guilty of assaulting Defendant Wright when he pushed on the chuck hole door, hitting Defendant Wright's wrist. In response to the order to show cause, Plaintiff admits he did push on the door, but states that he did not intend to assault Defendant Wright. He further claims that after the door hit Defendant Wright's hand, Defendant Wright intentionally hit Plaintiff with the key he was using to unlock the door. Plaintiff claims that Wright's conduct constitutes intentional excessive force undertaken with "malicious intent."

Plaintiff's admission that he pushed the door is sufficient to save the claim from being barred by *Heck*. As in *Gilbert*, Plaintiff's "contention that a guard struck back after being hit is compatible with *Heck*." **512 F.3d at 901.** Accordingly, *Heck v. Humphrey* does not bar claim two against Defendant Wright.

**E. CONCLUSION**

For the reasons thoroughly explained above, the Court hereby **DISMISSES** claim one of Plaintiff's complaint. As a result, Defendants Kabat and Shirely are **DISMISSED with prejudice**. However, claim two remains pending. Consequently, Defendant Wright is the only

---

[2] A district court may enter summary judgment *sua sponte* in favor of a party even if the party entitled to judgment did not file a motion seeking that relief, so long as the entry of judgment does not take a party by surprise. ***Goldstein v. Fidelity and Guaranty Ins. Underwriters, Inc.*, 86 F.3d 749, 750 (7th Cir. 1996) ("The party against whom summary judgment is entered must have notice that the court is considering dropping the ax on him before it actually falls.").** *See also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Hunger v. Leininger*, 15 F.3d 664 (7th Cir. 1994).

remaining defendant in this action.

       **IT IS SO ORDERED.**

       **DATED this 27th day of March 2009.**

                                  **s/ Michael J. Reagan**
                                  **MICHAEL J. REAGAN**
                                  **United States District Judge**